2026 IL App (1st) 260365-U

FIFTH DIVISION
June 30, 2026

No. 1-26-0365B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 26 CR 0131701 |
| v. | ) ) | Honorable |
| ROMEO LUNA, | ) ) ) | John Hock and Aleksandra Gillespie, |
| Defendant-Appellant. | ) | Judges Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Where the State failed to prove, by clear and convincing evidence, that defendant poses a real and present threat to the safety of any person or the community, the circuit court's pretrial detention order is reversed.

¶ 2     Defendant Romeo Luna appeals from the circuit court's order detaining him before trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024) (as amended by Pub. Act 101-625, § 10-255 (eff. Jan. 1, 2023) and Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act)). Mr. Luna argues

the State failed to overcome the presumption in favor of pretrial release by establishing that he poses a threat to the safety of any person or the community that no conditions of pretrial release can mitigate. We agree and reverse the pretrial detention order.

¶ 3                                  I. BACKGROUND

¶ 4      The State has charged Mr. Luna by felony complaint with the possession of less than 15 grams each of several controlled substances—alprazolam, amphetamine, and oxycodone (720 ILCS 570/402(c) (West 2024))—and with robbery (720 ILCS 5/18-1(a) (West 2024)), a detainable offense under the Code because it is a forcible felony (725 ILCS 5/110-6.1(a)(1.5) (West 2024)).

¶ 5      The State petitioned the circuit court on January 14, 2026, to detain Mr. Luna pretrial. The State argued, under section 110-6.1(e) of the Code (*id.* § 110-6.1(e)), that he posed a real and present threat to the safety of a person or persons or the community that no condition or combination of conditions on pretrial release could mitigate. At a hearing held the same day, the State proffered that at 1:47 p.m. on January 13, 2026, the victim of the robbery, a 20-year-old woman, was walking southbound on State Street near the Harold Washington Library. She was talking on her cell phone and using Google maps. Mr. Luna followed her across the street, approached her, and attempted to grab her phone. When she initially failed to relinquish it, he pulled her to the ground and kicked her in the stomach. He then ran to a nearby vehicle and entered it through the passenger door.

¶ 6      Officers who were sitting in traffic witnessed these events in real time. They activated their lights and sirens, blocked the vehicle with their squad car, and ordered Mr. Luna out of the car. He complied, and the officers detained him, recovering the victim's phone from where it lay on the ground next to the vehicle and the drugs mentioned above from his person. The victim sustained minor injuries—abrasions and the separation of a fingernail from the nailbed—but declined

emergency medical services. She identified Mr. Luna in a live show up as the person who had robbed her.

¶ 7     The State reported that Mr. Luna had no "publishable criminal background." He was arrested for leaving the scene of a car crash in Indiana in 2022, but that case was later dismissed. Pretrial services officers scored him a three out of six on the "New Criminal Activity" scale and a four on the "Failure to Appear" scale, resulting in a recommendation of pretrial supervision or "Pretrial Level 3."

¶ 8     The State argued the proof was evident and the presumption great that Mr. Luna committed robbery, a forcible felony, and that he was a danger to the community based on the specific facts of the case. The State contended that Mr. Luna had engaged in "absolutely abhorrent behavior" in that "he [wa]s following this 20-year-old girl, this innocent defenseless young woman, and preying on her" and he had done so in "broad daylight, on a Tuesday" and "right in the middle of Chicago." The State insisted that no conditions of pretrial release could mitigate the threat that Mr. Luna posed because electronic monitoring tracks "a person's location, not their behavior," it was "not designed for violent offenders," and "the behavior that this Defendant exhibited on this day was a violent incident." The State emphasized that Mr. Luna's victim "could have been absolutely anybody."

¶ 9     Defense counsel argued that Mr. Luna did not know the complaining witness and posed no threat to her personally or to the community at large. He had not attempted "to flee, conceal any evidence, or interfere with law enforcement's investigation" but had instead "complied with officers' commands and was arrested without incident." Nothing about the State's proffer indicated this offense was part of a pattern of robberies, and this was Mr. Luna's first arrest in Chicago. His arrests in Indiana had been for "minor and nonviolent" offenses, and he had never been accused,

3

let alone convicted, of robbery.

¶ 10    Mr. Luna was 24 years old and lived with his grandparents in Indiana. He saw his one-year-old daughter every weekend and provided her with both financial and caregiving support. He was a high-school graduate, worked as a roofer and did mechanical work, and had just applied for financial aid to return to community college to complete his degree. Counsel acknowledged that Mr. Luna struggled with addiction, which she noted might "help explain th[is] incident," but noted that he had "been actively working to address his struggles," having recently completed inpatient treatment and registered for outpatient treatment. He had the support of his mother and youth pastor and was "working hard to regain his footing and move forward in a positive, stable direction." Counsel argued that any risk the court believed Mr. Luna posed if he was released could be mitigated. The court could "impose pretrial supervision on any level," ensuring that Mr. Luna was "in constant communication with Pretrial Services," and Mr. Luna's mother had committed to transporting him to and from school and meetings with Pretrial Services.

¶ 11    The circuit court granted the State's petition, finding that it had shown by clear and convincing evidence that the proof was evident or the presumption great that Mr. Luna committed robbery, that he posed a real and present threat to the safety of individuals or the community, and that no conditions of release could mitigate that threat. As to Mr. Luna's dangerousness to the community, the court stated:

> "You don't live in Chicago. You came here in the middle of the day to—it looks like to rob a person, and, specifically, very likely for drugs, because you have an addiction. Your counsel argues that appropriately. However, it also shows to me that you're in some kind of desperate situation where you're coming to Chicago to look for and prey on vulnerable people who you think you can steal from, quite possibly to feed the addiction that you're

currently dealing with.

* * *

[The victim] resisted. She didn't want you to take her property. And the allegations are you're getting it one way or the other. You overpowered her in a violent way, pulled her to the ground, and then kicked her in the stomach. It's extremely dangerous. You're a threat not only to this person that you were to yesterday, you're a threat to anybody you might be able to have contact with.

Again, you live in Indiana. You come to Chicago probably thinking you might be able to get away with it. There is a lot of people to pick from. It's an intentional, very dangerous, and violent act."

¶ 12   As to possible conditions of release, the court said:

"And I do consider the fact that you don't have much criminal history whatsoever, of course I do. But, again, to go from really doing nothing to now going to Chicago in order to rob from a random person is extreme, and it shows that you're in some kind of state right now where you're not able to control your actions, and you're willing to go to violent lengths to steal from people. It is so outside the norms of civil society that I can't trust that you'll follow conditions I could place upon you right now."

¶ 13   The court noted that it could not order electronic monitoring, because Mr. Luna did not live in Cook County, but concluded that that option would be insufficient even if available. It was "reactive, not proactive," and would still allow him to be in the community twice a week. Mr. Luna struggled with addiction and might "in good faith, be trying to handle that," but it was clearly not working because he had engaged in this behavior, even though "the likelihood that [he was] going to be caught [wa]s extreme." No conditions of release were appropriate, the court concluded,

because "I can't trust that you would follow them, and it wouldn't physically prevent you from engaging in this type of behavior."

¶ 14    The court advised Mr. Luna that he had the right to file a motion for relief from the pretrial detention order and that, even if he did not, the court would "revisit [the] order of detention at each and every court date going forward."

¶ 15    A little over a month later, on February 24, 2026, Mr. Luna filed a "Motion for Relief" in which he argued that the State had failed to prove by clear and convincing evidence that he posed a real and present threat to any individual or the community. Mr. Luna again pointed out that he was employed, had his GED, had no criminal history except for an arrest for a traffic matter that was later dismissed, and had strong family support. He argued the State had presented nothing beyond the offense itself to establish that no conditions of release could mitigate any threat that he posed, and the circuit court had addressed only electronic monitoring, never considering whether further inpatient or outpatient substance abuse treatment might be appropriate.

¶ 16    At a status hearing before a different judge held that same day, defense counsel asked to present Mr. Luna's motion for relief, and the following exchange took place:

> "THE COURT: All right. Ms. Share, what new information do you have to add in this motion for relief that wasn't presented at the original detention hearing?
>
> MS. SHARE [(DEFENSE COUNSEL)]: Your Honor, what our argument is is that the information tendered at the detention hearing was—establishing a basis that the judge was in error—
>
> THE COURT: I'm not here to review that, to review the detention. In order to have this done, this motion for relief, there has to be new evidence that wasn't presented. If it's exactly the same, then I'm ready to make my finding right now."

6

¶ 17    Counsel pivoted, stating that she did have new information to present. She was working to get records from Mr. Luna's inpatient treatment program in Indiana and a hospital where he had previously "been hospitalized for both substance abuse and psychiatric reasons." She asked, based on his age, family support, and lack of criminal background, that Mr. Luna be given the opportunity to seek further treatment outside of custody.

¶ 18    The court ruled, upon examination of the file, including the transcript from the original detention hearing, that Mr. Luna posed a real and present threat to individuals or the community and would continue to be detained pretrial.

¶ 19    Mr. Luna now appeals.

¶ 20                                    II. JURISDICTION

¶ 21    Mr. Luna's motion for relief from the circuit court's January 14, 2026, pretrial detention order was denied on February 24, 2026, and he timely filed his notice of appeal on February 26, 2026. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2024)) and Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), which together govern appeals from orders denying the pretrial release of a criminal defendant.

¶ 22                                    III. ANALYSIS

¶ 23    Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2024). The State must seek pretrial detention by filing a timely, verified petition. *Id* § 110-6.1(a), (c)-(d)). To obtain that relief when it alleges that the defendant is dangerous, the State must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great that the defendant" committed a qualifying offense, (2) based on the facts of the case, he "poses a real and present threat to the safety of any person or persons or the community," and (3) "no condition or combination of conditions" provided in

7

section 110-10(b) of the Code can mitigate that safety risk. *Id.* §§ 110-6.1(e)(1)-(3), 110-10(b).

¶ 24 "Clear and convincing evidence" is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *People v. White*, 2024 IL App (1st) 232245, ¶ 19. It is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." (Internal quotation marks omitted.) *People v. Morales*, 2024 IL App (2d) 230597, ¶ 15. The State need not comply with the evidentiary rules applicable at trial and "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2), (5) (West 2024).

¶ 25 Section 110-6.1(j) of the Code provides a defendant the right to appeal from an order denying pretrial release (*id.* § 110-6.1(j)), and where, as here, the parties submitted evidence at the pretrial detention hearing by proffer and no live witnesses testified, we review *de novo* whether the State overcame the presumption of pretrial release (*People v. Morgan*, 2025 IL 130626, ¶¶ 21, 51).

¶ 26 A. The Circuit Court's Incorrect Treatment of Mr. Luna's Motion for Relief

¶ 27 Before reaching Mr. Luna's arguments for reversal, we first address what appears to be an ongoing misunderstanding regarding the role of defense motions seeking the review of pretrial detention orders under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). Subsection (h)(3) of that rule provides that an appeal from a pretrial detention order may be brought "at any time prior to conviction." But subsection (h)(2) establishes, as a *prerequisite* to such an appeal, that "the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief."

¶ 28    The rule makes clear that a Rule 604(h)(2) motion serves several purposes. It allows the movant "to identify errors in the circuit court's detention decision," gives "the court the chance to correct any errors and potentially change its ruling in the movant's favor," and "crystallizes and frames the issues for appeal." *People v. Patterson*, 2025 IL App (1st) 250510, ¶¶ 18-19. The circuit court "shall promptly hear and decide [a] motion for relief," at which point the defendant may *then* file his notice of appeal. Ill. S. Ct. R. 604(h)(2)-(3) (eff. Apr. 15, 2024). Any issue not raised in the motion—with the exception of an error arising at the hearing on the motion itself—is waived. *Id.*

¶ 29    A motion for relief under Rule 604(h)(2), when it is directed, as it was here, at the initial detention order, requires a different assessment then whether "continued detention" is appropriate under section 110-6.1(i-5) of the Code. The continued detention assessment is one the court must make, unprompted, at each of the defendant's subsequent appearances. 725 ILCS 5/110-6.1(i-5) (West 2024); *People v. Rice*, 2025 IL App (3d) 250262, ¶ 12. When making that determination, the court "starts from the premise that detention was necessary" and "asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. When a motion for relief is directed at the initial detention, the circuit court judge must review that detention decision to consider any claims of error raised in the motion and must begin with the premise that the defendant is entitled to release.

¶ 30    Although defense counsel and counsel for the State have properly addressed Mr. Luna's February 24, 2026, motion as a motion for relief under Rule 604(h)(2)—both in the circuit court and in their appellate briefs—the record indicates that the judge who heard that motion incorrectly believed she was considering only whether continued detention under section 110-6.1(i-5) of the Code was appropriate. She asked what new information defense counsel had "that wasn't presented at the original detention hearing," and, when counsel responded that the purpose of the

motion was to establish that the initial pretrial detention decision "was in error," the judge responded, "I'm not here to review that, to review the detention. In order to have this done *** there has to be new evidence that wasn't presented." The circuit court judge's understanding of the role of the trial court at that point was, for the reasons we have just stated, incorrect.

¶ 31                    B. The Pretrial Detention Order

¶ 32    We turn to the merits of Mr. Luna's appeal. As noted above, our standard of review on the initial detention decision is *de novo,* so we are not hampered by the circuit court's misunderstanding of the issue before it. We first address Mr. Luna's argument that the State failed to show by clear and convincing evidence that he poses a real and present threat to the safety of any person or to the community. To determine whether this requirement is met, section 110-6.1(g) of the Code directs the court to consider factors such as the nature and circumstances of the charged offense (including whether it was a crime of violence, involved a weapon, or was a sex offense); the defendant's history and characteristics; the identity of the victim and nature of the threat that the defendant may pose; whether the defendant was on probation or supervised release in another case; and any other factors having "a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior," or a lack thereof. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 33    Here, the circuit court concluded that Mr. Luna posed a real and present threat to the safety of members of the community because his drug addiction had "quite possibly" created "some kind of desperate situation," that prompted him to "com[e] to Chicago to look for and prey on vulnerable people" that he could steal from. According to the court, Mr. Luna came to Chicago "probably thinking [he] might be able to get away with it" because there are "a lot of people to pick from." We agree with Mr. Luna that these are not observations based on "the specific articulable facts of

the case," as required by section 110-6.1(g) (*id.*). Although it is proper for the court to make reasonable inferences based on the proffered facts (*People v. Hurtado*, 2024 IL App (2d) 230517-U, ¶ 11), the presumptions the court made here regarding Mr. Luna's motivations and broader criminal designs were purely speculative. Nothing in the State's proffer indicated that Mr. Luna came to Chicago with a premeditated plan to prey on vulnerable individuals or indeed provided any indication as to why he was visiting Chicago. Nor were any other stolen goods found on Mr. Luna's person or in the vehicle he entered following this alleged robbery that would suggest a pattern of criminal behavior.

¶ 34    The alleged offense began with Mr. Luna attempting to snatch something of value from a distracted woman. The alleged violence was not premeditated but, rather, occurred in the ensuing struggle over the phone. When Mr. Luna was almost immediately apprehended, he cooperated with the officers, making no attempt to resist arrest. We do not find that the proffered facts, including Mr. Luna's lack of a criminal record, provided clear and conclusive evidence that he is dangerous.

¶ 35    The court did not consider what conditions of release—other than electronic monitoring, which it rejected on the basis that Mr. Luna did not live in Illinois—would be appropriate here. The circuit court should do so on remand. See *People v. Cousins*, 2025 IL 130866, ¶ 36 (noting that when the State fails to satisfy its burden as to dangerousness, the proper remedy is to remand for a hearing on the conditions of release). When a defendant is released pending trial, necessary conditions include that he appear as ordered by the court, refrain from violating the criminal statutes of any jurisdiction, and, when charged with a forcible felony, surrender any firearms. 725 ILCS 5/110-10(a) (West 2024). Additional conditions may also be imposed where necessary. *Id.* § 110-10(b). Mr. Luna has substance abuse problems, as his counsel has acknowledged, and,

11

according to the State's proffer, was found with drugs on his person after committing a forcible felony. He has taken the first steps to seek help and has the support of his family, but court-ordered services may be helpful in ensuring that he appears in court, refrains from criminal activity, and complies with other conditions of pretrial release.

¶ 36                                    VI. CONCLUSION

¶ 37    For the above reasons, we reverse the circuit court's order granting the State's petition for pretrial detention and remand for a hearing on the conditions of Mr. Luna's pretrial release.

¶ 38    Reversed and remanded.